FILED

08/23/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 3, 2018 Session

## STATE OF TENNESSEE EX REL. HERBERT H. SLATERY, III, ATTORNEY GENERAL AND REPORTER v. HRC MEDICAL CENTERS, INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 12C4047          Donald R. Ash, Senior Judge**

_____

### No. M2017-02559-COA-R3-CV

_____

This is an action brought by the State of Tennessee pursuant to the Tennessee Consumer Protection Act, Tennessee Code Annotated section 47-18-101, *et seq*., and seeking judicial dissolution, pursuant to Tennessee Code Annotated section 48-24-301, of HRC Medical Centers, Inc., a for-profit corporation operating approximately 50 hormone replacement therapy centers. The State alleged, *inter alia*, that the corporation's advertising for its hormone replacement therapy was deceptive, and sought restitution for consumers. Also sued were the owners of HRC and their spouses; it is alleged that those defendants, as recipients of some of the assets of HRC, are personally liable for violations of the Uniform Fraudulent Transfer Act, Tennessee Code Annotated sections 66-3-305(a) and 66-3-306(a). The defendants filed motions to dismiss, for summary judgment, and to remand the case to the Division of Health Related Boards of the Tennessee Department of Health; all of the motions were denied. The State moved for summary judgment on the issue of liability under the Consumer Protection Act and, after the motion was granted, on the issue of damages. In granting the second motion, the trial court entered an award of $18,141,750, based upon the median amount paid by consumers for the hormone therapy treatment. The defendants appeal, raising issues related to the trial court's denial of their motion for remand, motions to dismiss, and motions for summary judgment; they also appeal the grant of summary judgment to the State. Upon a thorough review of the record, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court for Davidson County Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

William Kennerly Burger, Murfreesboro, Tennessee; and Wendel J. W. O'Reilly, Brentwood, Tennessee; for the appellants, HRC Medical Centers, Inc.; Dan Hale, Don Hale, Bonnie Hale, and Dixie Hale.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Brant Harrell, Senior Counsel; and Carolyn U. Smith, Senior Counsel, for the appellees, State of Tennessee – Civil.

Darryl G. Lowe, Knoxville, Tennessee, for the appellee, John C. McLemore.

Dana Renee Helton, Knoxville, Tennessee, Pro Se.

## OPINION

### FACTS AND PROCEDURAL HISTORY

HRC Medical Centers, Inc., ("HRC") is a for-profit corporation operating approximately 50 centers where it offers a treatment known as bio-identical hormone replacement treatment ("BHRT"). The State of Tennessee filed suit against HRC, Dan Hale, and Don Hale[1] on October 8, 2012, alleging that the defendants' advertisements and marketing for BHRT violated the Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated section 47-18-104(a) and (b); the State also moved for an *ex parte* temporary restraining order, which the trial court granted on October 10, a temporary injunction, and the appointment of a *pendente lite* receiver, both of which the court granted on December 27, appointing John C. McLemore as receiver "over [HRC] and all of the tangible and intangible assets and property, both personal and real of defendant HRC Medical."

On April 15, 2013, the State filed an amended complaint, adding numerous defendants, including Bonnie Hale and Dixie Hale,[2] and Dana Helton, in her capacity as Trustee of the Cardinal Revocable Trust, which had been formed by Dan Hale. On the same day, the State filed motions for a temporary restraining order and a temporary injunction, asking the trial court to freeze the assets of the added defendants, and a motion for appointment of a receiver, asking the trial court to appoint Mr. McLemore as receiver over the added defendants' assets. On April 26, the trial court issued the temporary restraining order and also appointed Mr. McLemore as receiver over the added defendants "and all of the tangible and intangible assets and property, both personal and

---

[1] Dan Hale, a doctor of osteopathy, was one of the original incorporators of HRC, and has served as president, secretary, and vice president of HRC. Don Hale is Dan Hale's brother and has served as the President and Chief Executive Officer of HRC.

[2] The complaint alleged that Bonnie Hale was Dan Hale's wife and that she had never been employed by HRC Medical. Dixie Hale is Don Hale's wife and is the chief administrative officer of HRC Medical.

2

real, of these defendants"; the court issued a temporary injunction against Bonnie Hale and Dixie Hale on August 20.

The State amended the complaint a second time on October 31, 2013 (the "Complaint"); this complaint governs this appeal.[3] In count one of the Complaint, the State alleged that the Defendants had violated the TCPA, specifically Tennessee Code Annotated sections 47-18-104(a), (b)(5), (22), and (27). In count two, the State sought judicial dissolution of HRC pursuant to sections 48-24-301, et seq., of the Tennessee Business Corporation Act. In count three, the State alleged that Defendants had violated the Uniform Fraudulent Transfer Act, specifically Tennessee Code Annotated sections 66-3-305(a) and -306(a). The Complaint sought the following relief:

> 3. That this Court adjudge and decree that TCPA Defendants[4] have engaged in the aforementioned acts or practices which violate the Tennessee Consumer Protection Act of 1977.
>
> 4. That pursuant to Tenn. Code Ann. § 47-18-108(a)(1), (a)(4), and (a)(5), this Court temporarily and permanently enjoin and restrain TCPA Defendants from engaging in the aforementioned acts or practices which violate the Tennessee Consumer Protection Act of 1977.
>
> 5. That pursuant to Tenn. Code Ann. §47-18-108(b)(1), this Court make such orders or render such judgments as may be necessary to restore to any person who has suffered any ascertainable loss as defined in Tenn. Code Ann. § 47-18-102(1) including statutory interest and requiring that TCPA Defendants pay all costs of distributing and administering the same, including through the use of a receiver or third-party restitution administrator.

---

[3] The defendants named in the second amended complaint were: HRC Medical Centers, Inc.; HRC Management Midwest, LLC; Dan Hale, individually and as an officer; Don Hale, individually and as an officer; Bonnie Hale; Dixie Hale, individually as an officer and doing business as Southern Belle Consulting; Charles Cannata, individually and as an officer; HRC Medical Centers Holdings, LLC; HRC Management, LLC; Dana Helton, in her capacity as Trustee of the Cardinal Revocable Trust; and Bella Vita Medical Centers, LLC. HRC Medical Centers, Inc., Dan Hale, Don Hale, Bonnie Hale and Dixie Hale are the parties to this appeal and references herein to "HRC" shall be to the corporation and the individual defendants in their capacity as corporate officers; other references will be to "Hale Defendants" or to the individual defendants by name.

[4] The "TCPA Defendants" was defined as HRC, Dan Hale, Don Hale, "individually and as an officer" of HRC, Dixie Hale, Bella Vita (a LLC that operated HRC's "former Nashville BHRT clinic location"), and Charles Cannata (a former manager of HRC's Nashville clinic).

6. Excluding any amounts refunded to consumers, that this Court make such orders or render such judgments as may be necessary to disgorge the profits and ill-gotten gains TCPA Defendants realized by reason of the alleged violations of the TCPA.

7. That this Court adjudge and decree that TCPA Defendants pay civil penalties of not more than one thousand dollars ($1,000.00) for each and every violation of the Tennessee Consumer Protection Act of 1977 to the State of Tennessee as provided by Tenn. Code Ann. § 47-18-108(b)(3).

8. That this Court enter judgment against TCPA Defendants and in favor of the State for the reasonable costs and expenses of the investigation and prosecution of Defendants' actions, including attorneys' fees and costs, expert and other witness fees, as provided by Tenn. Code Ann. § 47-18-108(a)(5) and (b)(4), and other state law.

9. That all of Defendant HRC Medical's, Defendant HRC Management Midwest's, and Defendant Bella Vita's contracts with consumers in Tennessee for BHRT and all of Midwest Restorative's, Bella Vita's, Legacy's, and BioLifecycle's renewal contracts with consumers in Tennessee be held void, unenforceable, and uncollectable.

10. That, pursuant to Tenn. Code Ann. § 47-18-108(b)(2), the court permanently revoke Defendant HRC Medical's incorporated status, Defendant HRC Management Midwest's ability to do business as a foreign limited liability company in Tennessee, and revoke Defendant Dan Hale's license to practice medicine as a doctor of osteopathy in the State of Tennessee.

11. That, pursuant to Tenn. Code Ann. § 48-24-301, the court judicially dissolve Defendant HRC Medical as a corporation, issue a decree of dissolution pursuant to Tenn. Code Ann. § 48-24-304(a), and then direct the winding up and liquidation of the corporation's business in accordance with state law.

12. That a receiver continue to be placed temporarily and permanently over Defendants HRC Medical, HRC Management Midwest, HRC Management, HRC Holdings, and the Cardinal Revocable Trust, to identify and marshal its assets and liabilities, to assume legal control over the entities, and to perform other tasks as set forth in the accompanying motion and proposed receivership order.

4

13. That a receiver continue to be placed temporarily over the personal assets of Defendants Don Hale, Dixie Hale individually and doing business as Southern Belle Consulting, Dan Hale, and Bonnie Hale to prevent asset dissipation, to identify and marshal their assets and liabilities, to perform other tasks as set forth in the accompanying motion and proposed receivership order, and to apply receivership assets towards any monetary judgment awarded to the State consistent with state law, including applicable personal exemptions.

14. That the transfers or obligations referenced above in paragraphs 814 to 1067 be voided under Term. Code Ann. § 66-3-308(a)(1).

15. That the Court continue its temporary injunction against Defendants Don Hale, Dan Hale, Dixie Hale, Bonnie Hale, HRC Medical, HRC Management Midwest, HRC Management, HRC Holdings, and the Cardinal Revocable Trust that prohibits further disposition of an asset transferred or other property and other relief as set forth in the accompanying motions and proposed receivership orders pursuant to Tenn. Code Ann. § 66-3-308(a)(3)(A),(B), and (C).

16. That the monetary, other assets, or other property that are found to have been transferred in violation of the UFTA be deemed to have been held in constructive trust for its rightful owner, including the HRC Medical receivership estate.

17. That a judgment be entered for the monetary, other assets, or other property that are found to have been transferred in violation of the UFTA with up to 10% prejudgment interest under Tenn. Code Ann. §§ 47-14-123 and 66-3-308(a)(3)(C).

18. That the monetary, other assets, or other property that are found to have been transferred in violation of the UFTA be returned to the HRC Medical receivership estate.

19. That, aside from any individual liability stemming from an individual's direct participation or control, the corporate statuses or statuses as limited liability companies for Defendants HRC Medical, HRC Management Midwest, Bella Vita, HRC Management, and HRC Holdings be disregarded for purposes of assigning liability to its members or shareholders for liability assigned to Defendants HRC Medical, HRC Management Midwest, Bella Vita.

5

20. That the Cardinal Revocable Trust, which among other things:

> was used as a mechanism for Defendant Dan Hale to fraudulently conceal his continued financial affiliation with Defendant HRC Medical;

> was formed following inquiries from state regulatory agencies and news media;

> is administered by Defendant Dan Hale's daughter; states that the Trust's spendthrift provisions do not apply to the Grantor;

> gives Defendant Dan Hale the "absolute and uncontrolled right and power to act alone to take or omit to take any action with regard to sales, investments, retentions of assets, or any other matter or matters relating to the administration of the trust estate or the investment or reinvestment of property constituting the trust estate;"

> and gives Defendant Dan Hale the right to revoke the trust agreement in its entirety during his lifetime, as well as the right to withdraw all or such part of the assets then constituting the trust estate and the right to amend, or modify the trust agreement;

be terminated, pursuant to Tenn. Code Ann. § 35-15-404, 35-15-410(a), and 35-15-505(a)(1) upon a finding that Defendant Dan Hale's purpose in forming the trust was to defraud creditors, and have its assets subject to any monetary liability obtained against Defendant Dan Hale.

Separate answers to the Complaint were filed by Dan Hale and Bonnie Hale, individually and on behalf of HRC Medical Centers, Inc., and Don Hale and Dixie Hale. In due course, the parties engaged in extensive discovery and other pre-trial matters. One of those matters at issue on appeal is Defendants' Motion for Administrative Remand, which was filed on January 23, 2014, wherein the court was asked to have the action "remanded" to the Division of Health Related Boards of the Tennessee Department of Health ("Health Related Boards").[5]  In due course, the State responded, and the motion was heard and denied.

---

[5] The motion did not designate on which defendant's behalf the motion was filed; the motion was signed by counsel for Dan Hale and Don and Dixie Hale.

On December 18, 2014, the State filed a motion seeking partial summary judgment against HRC and Don Hale, Dan Hale, and Dixie Hale on the issue of those defendants' liability on the TCPA claims (the "Liability Motion."). In support of the motion, the State filed a Statement of Undisputed Material Facts, numerous discovery documents, and "papers, documents and/or electronically stored information received from" several media outlets. HRC and the Hale Defendants (Don, Dan, Bonnie, and Dixie) responded to the motion and Statement of Undisputed Material Facts, to which the State replied; HRC and the Hale Defendants filed a Sur-Reply and a Supplemental Reply.

On May 1, 2015, HRC and the Hale Defendants filed a motion for summary judgment on the issue of liability. They argued that the State's evidence was insufficient to establish violations of the TCPA and that the State's attorneys did not fulfill their obligations under Tennessee Rule of Civil Procedure 11 in filing this action;[6] they supported the motion with numerous documents and a Statement of Undisputed Material Facts. The State filed a memorandum in response, accompanied by the affidavit of Dr. Ted Louis Anderson.

Both motions were heard on June 3 and taken under advisement; on August 31, the court entered an order granting the State's motion in part and denying the motion of the Defendants.

On March 2, 2017, the State moved for summary judgment on the issue of damages ("Damages Motion"), seeking "a consumer redress award of $18,141,750 to be lodged jointly and severally against Defendants HRC, Don Hale, Dan Hale, and Dixie Hale and a permanent injunction barring these Defendants from engaging in conduct the Court has already found to be unlawful," and a permanent injunction, enjoining HRC and the Hales from making certain representations about BHRT; the motion was supported by a Statement of Material Facts and multiple depositions.

On March 16, 2017, HRC and the Hale Defendants moved for summary judgment on the issue of damages, arguing that the State could not prove the essential elements of its claim and seeking dismissal of all claims; specifically, they argued that (1) there was a lack of necessary expert proof, (2) they were not liable under the TCPA, and (3) the State had failed to mitigate damages, which precluded an award of damages. In support, they filed a Statement of Undisputed Material Facts; the State responded to the motion and

---

[6] Specifically, in the motion HRC argued that the attorneys for the State violated Rule 11 by presenting claims "involving 'irreparable harm' based upon medical/clinical activities which involve highly technical concepts, without Daubert-quality documentation" because "subjects such as medical causation (i.e., medical harm) may not be advanced, in an context, without Daubert-quality support and documentation from an expert who is qualified to give opinions that support the claims of causation and harm."

Statement of Material Facts. The trial court heard argument on both motions and entered an order granting the State's motion and denying the Defendants' motion on July 17; the court entered judgment in the amount of $18,141,750 against HRC, Don Hale, Dan Hale and Dixie Hale, jointly and severally, and issued a permanent injunction barring those defendants "from engaging in conduct the Court has found unlawful." On December 7, the trial court entered an Agreed Order Directing the Entry of a Final Judgment on Certain Claims As To HRC, Dan Hale, Don Hale and Dixie Hale; the court certified the order as final in accordance with Tennessee Rule of Civil Procedure 54.02.[7,8]

Defendants appeal, stating numerous issues for our review, which we have restated as whether the court erred: in granting summary judgment to the State and awarding consumer restitution of $18,141,750 on the TCPA claim, and in denying Defendants' motion for summary judgment on that claim; in denying Defendants' motion to dismiss the TCPA claim for failure to comply with the pre-suit notice provisions of the Tennessee Healthcare Liability Act ("HCLA") and the TCPA; and in denying Defendants' motion to remand the case for consideration by Health Related Boards. Defendants also raise issues in regards to the timeliness and adequacy of the State's Rule 26 disclosures and the admissibility of the testimony of one of the State's expert witnesses, Dr. Ted Louis Anderson. We address the pre-suit notice and motion to remand issues first.

<u>ANALYSIS</u>

## I. Pre-Suit Notice Under the Health Care Liability Act

HRC moved on two occasions to dismiss this action under Tennessee Rule of Civil Procedure 12.02, arguing that this is a health care liability action and that the State did not comply with the requirement of the HCLA, Tennessee Code Annotated 29-26-

---

[7] On October 28, 2016, the State moved for summary judgment against Dixie and Bonnie Hale, asserting that Dixie Hale should be held individually liable for HRC Medical's violations of the TCPA, and that Bonnie Hale was "liable under the [Uniform Fraudulent Transfers Act] in the amount of $30,000, consistent with Tenn. Code Ann. § 66-3-309(a) and § 66-3-308(a)(3)(C), and that the transfer was fraudulent under Tenn. Code Ann. §§ 66-3-306(a), 66-3-305(a)(2)(A), (B), and 66-3-305(a)(1). The motion was supported by a Statement of Undisputed Material Facts, numerous discovery documents, and other exhibits. Dixie and Bonnie Hale each responded to the motion and the State replied to both responses. On February 27, 2017, the trial court granted summary judgment against Dixie Hale but denied it against Bonnie Hale. The disposition of this motion is not an issue on appeal. The record also shows that a motion for summary judgment dated September 9, 2016, was filed by Bonnie Hale; we have failed to find an order disposing of this motion in the voluminous record. Neither party has raised any issue on appeal related to this motion.

[8] Unless otherwise noted, for ease and clarity, we will refer to HRC and the Hale defendants collectively as HRC.

121(a)(1), that written notice of health care liability claims be sent to a health care provider sixty days before suit is filed; both motions were denied by the trial court.[9] HRC renews its argument on appeal. In reliance on the holding in *Tucker v. Sierra Builders* that the TCPA was enacted to provide "additional, supplementary state law remedies to consumers victimized by unfair or deceptive business acts or practices," the State argues that this action concerns deceptive business practices that violate the TCPA and is not a health care liability action. 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005).

This issue was raised by motion to dismiss for failure to state a claim for relief, filed pursuant to Tennessee Rule of Civil Procedure 12.02(6). The purpose of such a motion "is to test the sufficiency of the complaint." *Gore v. Tenn. Dep't of Correction*, 132 S.W.3d 369, 373 (Tenn. Ct. App. 2003) (quoting *Willis v. Tenn. Dep't of Correction*, 113 S.W.3d 706, 710 (Tenn. 2003)). In determining whether the pleadings state a claim upon which relief can be granted, only the legal sufficiency of the complaint is tested, not the strength of the plaintiff's proof. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). We review the trial court's legal conclusions regarding the adequacy of the complaint *de novo*. *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010); *Stein*, 945 S.W.2d at 716.

The Complaint, spanning over 150 pages, set forth the nature of the action:

> This civil law enforcement action is brought in the name of the State of Tennessee, in its sovereign capacity, by and through Robert E. Cooper, Jr., Attorney General and Reporter, pursuant to Tenn. Code Ann. § 47-18-108 of the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. § 47-18-101 et seq. to protect consumers and the integrity of the commercial marketplace in Tennessee. Further, pursuant to Tenn. Code Ann. § 48-24-301, the State seeks to judicially dissolve Defendant HRC Medical Centers, Inc. for transacting business in a persistently fraudulent manner.

The factual allegations related generally to the types of medical treatments being performed by HRC and its related entities, and the advertising HRC employed; specifically, the State alleged that "Defendants advertise, sell, and administer a purportedly unique cocktail of 'bioidentical hormones.'" As to Don and Dan Hale, the Complaint made allegations related to their knowledge of the organizational structure and

---

[9] The first motion was filed on November 4, 2013, and denied on February 27, 2014; the motion asserted that dismissal was proper under Rule 12.02(1) because, as a result of the lack of pre-suit notice, the court did not have subject matter jurisdiction. HRC renewed the motion following the Tennessee Supreme Court's opinion in *Ellithorpe v. Weismark*, 479 S.W.3d. 818 (Tenn. 2015), asserting that the lack of pre-suit notice required dismissal for failure to state a claim under Rule 12.02(6); this motion was denied on February 12, 2016.

operations of HRC; their knowledge of hormones, hormone replacement therapy, and bio-identical hormone replacement therapy; and how HRC's bio-identical hormone replacement therapy was marketed, advertised, and sold.

The Complaint set forth three causes of action. First, the State asserted that HRC had violated sections 47-18-104(a), (b)(5), (b)(8), (b)(22), and (b)(27)[10] of the TCPA by: engaging in various forms of deceptive advertising; making numerous express claims in its advertisement that either HRC knew to be false or HRC "made without adequate support to substantiate such claim at the time made"; using "fabricated quotes from purported studies about the purported benefits, efficacy, risks, and side effects of Defendant HRC Medical's BHRT'"; not disclosing the risks of side effects or conveying the extent of the possible side effects of its BHRT treatment; using deceptive consumer testimonials in its advertising; and by accepting "advance payment from consumers through cash or financing and using a no refund provision . . . without "knowing whether [HRC]'s BHRT will be appropriate, or without knowing how the consumer will respond to the BHRT initially." The second and third causes of action were, respectively, for

---

[10] Tennessee Code Annotated sections 47-18-104 states:

(a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.

(b) The following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;
> * * *
> (8) Disparaging the goods, services or business of another by false or misleading representations of fact;
> * * *
> (22) Using any advertisement containing an offer to sell goods or services when the offer is not a bona fide effort to sell the advertised goods or services. An offer is not bona fide, even though the true facts are subsequently made known to the buyer, if the first contact or interview is secured by deception;
> * * *
> (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27) is vested exclusively in the office of the attorney general and reporter and the director of the division . . . .

judicial dissolution pursuant to section 48-24-304[11] and for HRC's violation of the Uniform Fraudulent Transfer Act, section 66-3-301, *et seq.*

In *Proctor v. Chattanooga Orthopaedic Group, P.C.*, we held that the TCPA can apply to the entrepreneurial, commercial, or business aspects of a medical practice. 270 S.W.3d 56, 57, 61 (Tenn. Ct. App. 2008).[12] In that case, the defendants moved to dismiss the plaintiff's TCPA claims against a medical provider for failure to state a claim, and the trial court granted the motion, holding that the allegations of the complaint, which the court said "sounded in alleged deceptive business practices under the [TCPA]," did not state a claim for relief. *Id.* at 58. On appeal, the defendants argued that the TCPA "does not apply to the provision of medical services." *Id.* at 59. This court reversed the trial court, holding that medical malpractice and consumer protection claims are "wholly separate and distinct claims governed by separate statutory schemes." *Id.* at 60 (comparing Tenn. Code Ann. § 29-26-115, *et seq.* with Tenn. Code Ann. § 47-18-101, *et seq*). We concluded that Mr. Proctor had sufficiently pled his consumer protection claim based on his allegations that "[d]efendants had misled [him] in order to keep [his] business, and that [d]efendants charged for a more expensive procedure than the one actually performed." *Id.* (distinguishing those allegations that support a TCPA claim from the allegations that would support a medical malpractice claim: "Plaintiffs did not allege that Defendants had deviated from the acceptable standard of professional practice in either the decision to perform the surgery that was performed or in the manner in which the actual surgery was performed.").

Consistent with our holding in *Proctor*, we agree with the trial court in this case that "the gravamen of the State's complaint lies in alleged deceptive business practices under the [TCPA], not in [health care liability]." The State's enforcement action does not meet the definition of "Health Care liability action" found in section 29-26-101(a)(1). The Complaint does not allege that HRC was negligent in providing BHRT treatment to any individual patient or BHRT patients as a group; neither, using the language in *Proctor*, does it allege that HRC "had deviated from the acceptable standard of

---

[11] The Complaint alleged that HRC should be judicially dissolved because it had "carried on, conducted, or transacted its business or affairs in a persistently fraudulent or illegal manner."

[12] In *Proctor v. Chattanooga Orthopaedic Group, P.C.*, the plaintiff began treatment under the care of Dr. N. Earl McElheney, who worked for the defendants, two providers of orthopedic services. 270 S.W.3d 56, 57 (Tenn. Ct. App. 2008). Dr. McElheney performed two shoulder surgeries on the plaintiff, who also agreed to have Dr. McElheney perform a total shoulder replacement. *Id.* at 58. Before the surgery took place, Dr. McElheney disassociated from the group, and the plaintiff's surgery was performed by Dr. Alan Odom, who was associated with the defendants. *Id.* Mr. Proctor later filed suit alleging that defendants had violated the TCPA by deceiving "Mr. Proctor regarding Dr. McElheney's availability to perform the surgery in order for Defendants to keep his business and the income from Mr. Proctor's surgery, and further had deceived Mr. Proctor regarding the extent of the surgery actually performed." *Id.*

professional practice in" in deciding to administer BHRT or "in the manner in which" the BHRT was administered. 270 S.W.3d at 60. The allegations of the Complaint are focused on the deceptiveness of HRC's business practices, which are part and parcel of the harm that the TCPA was enacted to remedy. Tenn. Code Ann. § 47-18-102 ("This part shall be liberally construed to promote the following policies: . . . (2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state . . . .").

The basis of the TCPA action is that HRC advertised BHRT to its patients using false or incomplete information in violation of the TCPA, not that HRC failed to properly administer BHRT, thereby causing an injury; the allegations relate to advertising practices and state a claim for relief under the TCPA. As this case is not a healthcare liability action, the State was not obligated to send the pre-suit notice required by section 29-26-121(a)(1); consequently, the court did not err in denying HRC's motion to dismiss.

## II.    Pre-Suit Notice Under the Consumer Protection Act[13]

Tennessee Code Annotated section 47-18-108(a)(2) requires that the State give at least 10-days notice prior to instituting legal proceedings[14] under the TCPA unless it "determines in writing that the purposes of [the TCPA[15]] will be substantially impaired

---

[13] In its initial brief, HRC argues that the State violated Tennessee Code Annotated 47-18-106 and -107, and United States Code Annotated title 15, section 53, by failing to give this notice. We are unable to find any requirement that a party be notified ten-days prior to the institution of proceedings in either of these sections.

[14] The legal proceedings provided for are explained in section 47-18-108(a)(1):

> Whenever the division has reason to believe that any person has engaged in, is engaging in, or, based upon information received from another law enforcement agency, is about to engage in any act or practice declared unlawful by this part and that proceedings would be in the public interest, the attorney general and reporter, at the request of the division, may bring an action in the name of the state against such person to restrain by temporary restraining order, temporary injunction, or permanent injunction the use of such act or practice.

The "division" is the Division of Consumer Affairs of the Department of Commerce and Insurance. Tenn. Code Ann. § 47-18-103(5).

[15] The purposes of the TCPA are listed in section 102:

This part shall be liberally construed to promote the following policies:

(1) To simplify, clarify, and modernize state law governing the protection of the

12

by delay in instituting legal proceedings." The 10-day notice requirement is intended to give the recipient of the notice "an opportunity to present reasons why such proceedings should not be instituted." *Id.*

HRC contends that "[t]he record contains not one word of explanation by the State as to why it chose to bypass the statutory requirement to give the Hales a chance to change any alleged inappropriate advertising."[16] However, the State alleged in the third paragraph of the Complaint that:

> Pursuant to Tenn. Code Ann. § 47-18-108(a)(2), the Director of the Division of Consumer Affairs has determined that the purposes of the TCPA will be substantially impaired by a delay in instituting legal proceedings and has not provided Defendants with 10 days' notice of the State's intention to initiate legal proceedings against them.

Further, in paragraph four of the Certification of Assistant Attorney General Brant Harrell in Support Of State's Ex Parte Motion for Temporary Restraining Order, which was filed with the complaint, Mr. Harrell stated:

> The interests of justice require that the State's request be heard ex parte. Simply put, Defendants' misrepresentations and material omissions about their "bio-identical" hormone replacement therapy ("BHRT") place consumers' health in danger without their knowledge and leave consumers in the dark as to the true safety, risks, and side effects of BHRT. Because these risks or potential risks, which include endometrial cancer, breast cancer, and other serious health risks, to even one individual are so grave,

---

consuming public and to conform these laws with existing consumer protection policies;

(2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state;

(3) To encourage and promote the development of fair consumer practices;

(4) To declare and to provide for civil legal means for maintaining ethical standards of dealing between persons engaged in business and the consuming public to the end that good faith dealings between buyers and sellers at all levels of commerce be had in this state; and

(5) To promote statewide consumer education.

[16] HRC also argues that this issue is related to its argument relative to the trial court's computation of the damages awarded to the State, which we discuss *infra* at Section IV B.

the State has moved for a TRO without notice to Defendants in order to stop false, deceptive, and/or unsubstantiated claims and omissions before the time that a temporary injunction hearing can be held.

(citations omitted).[17]

The requirement of the section 108(a)(2) is: (1) give 10-days notice before moving for a restraining order or injunction or (2) explain, in writing, why the purposes of the TCPA will be "substantially impaired" by delay; the State took the second route. In so doing, the State certified in paragraph three of the Complaint that "the purposes of the act would be substantially impaired by a delay in instituting legal proceedings"; this was supported by paragraph four of General Harrell's certification and the other exhibits, *inter alia*, documenting the advertisements that were the subject of the action and the potential harm to consumers arising from the advertisements. We do not second guess the State's determination to proceed in this fashion and, on the record presented, conclude that the State complied with the requirements of section 108(a)(2) and was not required to give notice prior to instituting the action.

## III.    Exhaustion of Administrative Remedies

On January 23, 2014, HRC filed a Motion for Administrative Remand in which it asked the trial court to remand the case to Health Related Boards for disposition, arguing that the State had failed to exhaust mandatory administrative remedies by not filing its claim under the TCPA with that agency. The trial court denied the motion, holding:

The Court cannot remand an action back to a forum that it never was in the first place—especially a forum that does not possess subject matter jurisdiction to adjudicate the underlying causes of action. Further, consistent with the TCPA, specifically Tenn. Code Ann. § 47-48-112 (2010 as amended), the Health-Related Boards' jurisdiction is not exclusive over the conduct set forth in the State's Complaint and does not preempt a claim brought by the State under the TCPA. The Court reaffirms its finding as set forth in its Memorandum Opinion Denying Defendant Dan Hale's Motion to Dismiss that the gravamen of the State's action is a properly-brought civil law enforcement action under the TCPA concerning Defendants' advertising, sales, and promotional practices.

On appeal, HRC states the issue with respect to the trial court's ruling:

---

[17] In addition to this certification, the State filed 52 exhibits, which included, among other things, affidavits of doctors and HRC customers.

In evaluating the conduct of a Tennessee licensed clinic in effecting any medical practice or procedure, does the State have a statutory duty to present such issues of trivial versus substantial medical side effects, or other medical harm, first to the Tennessee Health Related Boards for review and action by its "screening panels, which are composed of licensed physicians."

In its brief, HRC asserts that the State had a "statutory duty to present" the claims that were the subject of the suit to the "Tennessee Health Related Boards" before filing suit; however, HRC also states that "no statute absolutely requires that [the State submit its claims to the Health Related Boards]" and that submitting claims to the Health Related Boards is "not a mandatory requirement for the State or the trial court." As we understand the argument, HRC contends that trial court had the discretion to remand the suit to the Health Related Boards and abused that discretion by not doing so. An abuse of discretion occurs if a trial court causes an injustice to a party by "(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).[18]

HRC does not identify the source of authority for Health Related Boards to consider the TCPA claims in this suit, and acknowledges that there is no statutory mandate that required the trial court to "remand" this action to the Division. In the absence of such authority, we cannot conclude that the court applied an incorrect legal standard or reached an illogical or unreasonable decision. Further, as held previously, we agree that this suit is properly brought under the TCPA, and Health Related Boards has no function in that regard.

---

[18] In *Lee Medical, Inc. v. Beecher,* our Supreme Court has described the abuse of discretion standard of review thusly:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

312 S.W.3d 515, 524 (Tenn. 2010).

15

**IV.     Motions for Summary Judgment**

We now address the rulings granting the State's and denying HRC's motions for summary judgment.

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. "To be material, a fact must be germane to the claim or defense on which the summary judgment is predicated." *Green v. Green,* 293 S.W.3d 493, 514 (Tenn. 2009) (citing *Eskin v. Bartee,* 262 S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn. 1999)).   A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

To assist the Court in determining whether any material facts are in dispute, the moving party must file "a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial . . .  Each fact shall be supported by a specific citation to the record."   Tenn. R. Civ. P. 56.03. The party opposing summary judgment must then:

> serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.

Tenn. R. Civ. P. 56.03.

On appeal, we view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke,* 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002).   We review the trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC,* 477 S.W.3d 235, 250 (Tenn. 2015).

**A.     The State's Motion for Summary Judgment on Liability/HRC's Motion for Summary Judgment**

The TCPA prohibits all "[u]nfair or deceptive acts or practices affecting the

16

conduct of any trade or commerce" but leaves those terms undefined. Tenn. Code Ann. § 47-18-104(a).[19] Accordingly, we have concluded that "the standards to be used in determining whether a representation is 'unfair' or 'deceptive' under the TCPA are legal matters to be decided by the courts." *Tucker*, 180 S.W.3d at 116. Generally, to recover under the TCPA, "the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an '"ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . ."' *Id.* at 115. (quoting Tenn. Code Ann. § 47-18-109(a)(1)).

In its first motion for summary judgment (the "Liability Motion"), the State contended that HRC had violated the TCPA by publishing advertisements that contained false representations, unsubstantiated representations, and representations that omitted material facts. In its motion, HRC argued that the State's evidence was insufficient to establish a violation of the TCPA and "the State possessed no evidence at the time the lawsuit was filed which would minimally meet the requirements of [Tennessee] Rule [of Civil Procedure] 11."

In the order disposing of the motions, the court partially granted the State's motion and denied HRC's motion. As to the State's motion, the court ruled that HRC had violated the TCPA in five ways:

(1) By advertising that BHRT was "completely" safe;

(2) By advertising BHRT had "no side effects";

(3) By advertising BHRT "could make a user's hormones identical to those he or she had when she was in her twenties or thirties";

(4) By advertising BHRT was manufactured at a compounding pharmacy that was approved by the U.S. Food and Drug Administration; and

---

[19] This court has held that a "deceptive" act or practice is "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Tucker*, 180 S.W.3d at 116; *see also Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009) ("A deceptive act or practice is "a material representation, practice or omission likely to mislead . . . reasonable consumer[s]" to their detriment.") (quoting *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997)). "For the purposes of the TCPA . . . the essence of deception is misleading consumers by a merchant's statements, silence, or actions." *Id.* (citations omitted). We have interpreted "unfair" acts or practice as broader than "deceptive" acts or practices, encompassing "various abusive business practices that are not necessarily deceptive." *Id.* (citing Jonathan Sheldon & Carolyn L. Carter, UNFAIR AND DECEPTIVE ACTS AND PRACTICES § 4.2.3.1, at 118–19 (5th ed.2001)).

(5) By omitting that it had material connections to individuals who provided testimonials in its advertisements.

The court also granted the State summary judgment on the personal liability of Don Hale and Dan Hale, denied summary judgment as to the personal liability of Dixie Hale.

Consistent with the standard applicable to the resolution of summary judgment motions, we review the record to determine first, whether there was a genuine issue of material fact which would preclude summary judgment and, if not, whether the State was entitled to judgment as a matter of law.

In support of its motion, the State filed a Rule 56.03 Statement of Undisputed Material Facts consisting of 249 statements,[20] responses of HRC to discovery, and other materials provided by media outlets, including interviews with various employees of HRC; the State also relied upon numerous affidavits of customers of HRC which had been filed with the complaint in support of the application for injunctive relief. HRC responded to the State's Rule 56.03 statement, disputing seventeen facts either fully or partially; nine of the facts disputed by HRC were offered to show liability on a ground on which summary judgment was granted.[21] We first discuss these nine facts to determine whether any creates a genuine issue of material fact that would preclude summary judgment; the nine facts relate generally to three areas of advertising: that BHRT was completely safe (paragraphs 27, 28, and 31); that BHRT had no side effects (paragraphs 34 and 38); and that BHRT was manufactured in a FDA approved facility (paragraphs 112 through 115).

### 1. Undisputed Facts

### a. BHRT was completely safe

The State asserted the following facts in support of the allegation that HRC violated the TCPA by expressly claiming in its advertising that its BHRT treatment was completely safe.

---

[20] Each statement was accompanied by a footnote citing the location of the source of the statement in the record. This shifted the burden to HRC to either "(i) agree[] that the fact is undisputed, (ii) agree[] that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrate[] that the fact is disputed" and support "[e]ach disputed fact" by "specific citation to the record." Tenn. R. Civ. P. 56.03.

[21] Four of HRC's seventeen responses were supported by citations to the record.

**Paragraph 27.** There were possible side effects for Defendant HRC's BHRT for both men and women.

**Paragraph 28.** Possible side effects of Defendant HRC's BHRT in women include a deepening of the voice, dysfunctional uterine bleeding, hypertension, hair loss, clitoral hypertrophy, unwanted facial hair, acne, weight gain, and fluid retention.

**Paragraph 31.** Possible side effects of Defendant HRC's BHRT in men, which consisted of testosterone, an anabolic steroid, include acne, hypertension, erythroeytosis, testicular atrophy, and azospermia.

**Response to Paragraphs 27, 28, and 31.** Denied as to the reference to "Defendant HRC's BHRT." BHRT has possible, minimal side effects, whether administered by HRC, Dr. Ted Anderson, Dr. Anderson's colleagues at Vanderbilt, or any other clinician in this country. They were no different for HRC, and each and every statement to that effect is denied. That denial is based upon multiple statements by Dr. Anderson which support that comment (itemized in the Defendants' Motion for Summary Judgment). Dr. Anderson repeatedly states that BHRT is the "preferred" therapy because of its benefits.

Each fact was supported as required by Rule 56.03 by citation to admissible evidence.[22]

Taken in context, the material fact that is asserted is that BHRT has side effects. HRC does not deny that fact but, rather, asserts that HRC's BHRT is not the only BHRT with side effects. HRC's response to these statements is argumentative, does not address the fact asserted, and does not create a genuine issue of material fact. Consequently, statements 27, 28, and 31 are undisputed for purposes of summary judgment.

### b. BHRT had no side effects

The State asserted the following facts in support of the allegation that HRC violated the TCPA by expressly claiming in its advertising that its BHRT treatment had no side effects.

---

[22] In support of paragraphs 27, 28, and 31, the State cited and quoted Dan Hale's response to the State's first requests for admissions, the State's first requests for admissions to Don Hale, and Dan and Don Hale's affidavits, which were attached to HRC's Response in Opposition to the State's First Temporary Injunction Motion.

**Paragraph 34.** Defendant HRC, including through spokespeople like Defendants Don Hale, Dixie Hale, and Dan Hale, did not disclose warnings about possible side effects and potential dangers in television, radio, print, and other promotional advertisements for HRC's BHRT.

**Response to Paragraph 34.** Denied as to side effects. The statement is too broad to be comprehensible as a "material fact," as the following item ("other places")[23] indicates. Side effects were always candidly discussed. The information was placed in advertising brochures. More importantly, the information was provided prior to any contract being signed in a detailed, multi-page "informed consent" form, which required the prospective patient's signature on every page. Unlike Dr. Anderson's situation (where he merely speaks to the patient and notes it in the chart), HRC's prospective patients had the opportunity to take the materials home and study them prior to signing each page and returning the document to HRC (Affidavit of Dr. Dan Hale, ¶¶ 6 and 8).[24]

**Paragraph 38**. Any discussion of potential side effects by a licensed medical professional affiliated with HRC occurred after the point of sale for BHRT.

**Response to Paragraph 38.** Denied. The informed consent requirements were satisfied prior to any contract or taking of money from a prospective patient.

---

[23] The use of this term is an apparent reference to paragraph 35 of the State's Rule 56.03 statement:

> 35. In other places, Defendant HRC disclosed a few possible side effects, but omitted reference to other side effects. For example, in a brochure for its BHRT distributed to prospective consumers in Tennessee, Defendant HRC only stated the following about side effects [excerpted below]:
>
>> What are the side effects?
>>
>> A small number of women may have increased breast sensitivity and spotting. The spotting is managed with progesterone capsules each evening. Most of these side effects, if they occur, will resolve after your body adjusts to the hormones.

[24] We have reviewed paragraphs 6 and 8 of the affidavit of Dan Hale as well as paragraphs 6 and 8 of Don Hale's affidavit; based on the assertions in HRC's response, it is apparent that the reference should have been to Don Hale's affidavit.

Each fact was properly supported, thereby shifting the burden to HRC in accordance with Rule 56.03.

The responses to paragraphs 34 and 38 fail to show there was a genuine issue of material fact, such as to preclude summary judgment on this issue. First, we do not agree with HRC's statement that paragraph 34 is "too broad to be comprehensible"; the material fact asserted by the State is that there were side effects of BHRT that were not disclosed in its advertisements. Second, in responding to paragraphs 34 and 38, HRC did not cite any advertising brochures in which it disclosed that side effects were possible, nor did it cite any other evidence that would enable "a reasonable jury" to "legitimately resolve" the facts asserted in its favor.[25] *Perkins*, 380 S.W.3d at 80. Third, HRC's statement in paragraphs 34 and 38 that patients were notified of the side effects of BHRT before treatment is immaterial for purposes of the TCPA analysis: an advertisement is deceptive and "[t]he law is violated if the first contact or interview is secured by deception . . . even though the true facts are made known to the buyer before he enters into the contract of purchase." *Carter Prod. v. Fed. Trade Comm'n*, 186 F.2d 821, 824 (7th Cir. 1951) (citing *Federal Trade Comm. v. Standard Education Society*, 302 U.S. 112, 115 (1937) and *Progress Tailoring Co. v. Fed. Trade Comm.*, 153 F.2d 103, 105 (7th Cir. 1946)). Accordingly, HRC's attempt to dispute these facts did not create a genuine issue of material fact which would preclude summary judgment.

### c. BHRT was manufactured in a FDA approved facility

The State asserted the following facts in support of the contention that HRC violated the TCPA by expressly claiming in its advertising that its BHRT treatment was manufactured in a facility that was FDA approved.

> **Paragraph 112.** The compounding pharmacies that Defendant HRC used to supply the components of its hormone replacement therapy were never approved by the United States Food and Drug Administration.

> **Paragraph 113.** In spite of this, Defendant HRC told consumers that its compounding pharmacy was FDA-approved in advertisements—a claim for which Defendant Dan Hale admitted he was responsible.

---

[25] In his affidavit, Don Hale states that HRC never intended to violate the law in any way; that it had never been put on notice that it was violating the law; and, that HRC retained a Nashville law firm to ensure that it was not violating the law, making "improvements to [HRC's] website disclosures" and creating "documents which further inform the patients of risks and possible side effects of BHRT." He also explains how HRC's BHRT program was implemented, explaining how patients were introduced to the program, how the program was advertised, what type of treatment the patient received, and who provided the treatment.

**Paragraph 114.** Defendant HRC stated the following in promotional materials for its BHRT, which were handed out to consumers in Tennessee: Our pellets are bio-engineered using all natural ingredients by our FDA approved compounding pharmacy. Our pharmacy is one of only two FDA approved pharmacies of their kind in the United States.

**Paragraph 115.** Defendant HRC experienced quality-control issues related to the compression of pellets used by HRC for its BHRT that were supplied by the compounding pharmacies it used for pellets.

**Response to Paragraphs 112-115.** These items (pertaining to "compounding pharmacies") are denied as immaterial, with no citation to any Daubert-quality evidence which would qualify under T.R.E. Rule 703 as establishing any "materiality" to the case issues. Despite the State's objections in the Deposition of Dr. Ted Anderson, Dr. Anderson unequivocally states that he has no knowledge whatsoever of any "compounding pharmacy" issues, despite allegations to the contrary set forth in the State's Complaint. The specific, verbatim references are cited and incorporated by reference from the Defendants' Motion for Summary Judgment.

Each fact was properly supported by citation to admissible evidence.[26]

---

[26] Paragraphs 112 and 113 cited paragraph 535 of the Complaint, which alleged in part that "Defendant HRC Medical falsely told consumers that its compounding pharmacy was FDA-approved." Defendants' answer to that paragraph stated:

> Agreed. This was my mistake. I did not understand the complexity of the labeling of FDA approved. After a few months of practicing BHRT I called MasterPharm and spoke to one of their pharmacists asking them exactly if we could say that MasterPharn was FDA-approved…. The response was that we could say that the compounds produced by MasterPharm were recognized by the FDA.

Paragraph 114 cited an attachment to an affidavit of "Jane Doe number 15," which was filed in support of the first motion for temporary restraining order; the attachment was a welcome letter that states in pertinent part "Our pellets are bio-engineered using all natural ingredients by out FDA approved compounding pharmacy. Our pharmacy is one of only two FDA approved pharmacies of their kind in the United States." Paragraph 115 cited the following allegation and answer from the Complaint:

> 102. Through conversations and communication with employees of Defendant HRC Medical, including Trina Lonning and Defendant Charles Cannata, Defendant Don Hale also knew about significant quality-control problems at the compounding pharmacy that Defendant HRC Medical used to provide the pellets for its BHRT, including with the consistency of pellet compression and absorption of pellets.

22

In accordance with Rule 56.03, HRC was required to cite to evidence in the record that shows that "a reasonable jury could legitimately resolve that fact" in its favor; this HRC failed to do. *Perkins*, 380 S.W.3d at 80. Moreover, the facts asserted in paragraphs 112 through 115 are not based on expert opinion within the scope of Tennessee Rules of Evidence 703. Further, HRC's argument that the facts are immaterial is not a substitute for the obligation to assert and establish, by citation to evidence in the record, that the fact is disputed or undisputed in accordance with Rule 56.03; in addition, the argument is without merit, inasmuch as the facts asserted directly relate to HRC's advertising. Accordingly, HRC's response to these facts did not create a genuine issue of material fact.

To summarize, the State supported its motion for summary judgment as required by Rule 56.03, filing a properly supported statement of undisputed material facts; HRC failed to show that there was a genuine issue of material fact for trial as to these matters. Thus, we proceed to determine whether the State was entitled to judgment as a matter of law.

### 2. Judgment as a Matter of Law

The Legislature has instructed that courts interpret and construe the TCPA "consistently with the interpretations given by the federal trade commission [("FTC")] and the federal courts pursuant to § 5(A)(1) of the Federal Trade Commission Act [("FTCA")], codified in 15 U.S.C. § 45(a)(1)."[27] Tenn. Code Ann. § 47-18-115. To successfully prove a deceptive advertising claim "under section 5(a) [of the FTCA], the FTC must establish three elements: "(1) that the advertisement conveyed a representation through either express or implied claims; (2) that the representation was likely to mislead consumers; and (3) that the misleading representation was material." *F.T.C. v. Direct Mktg. Concepts, Inc.*, 569 F. Supp.2d 285, 297–98 (D. Mass. 2008), *aff'd*, 624 F.3d 1 (1st Cir. 2010) (citing *Fed. Trade Comm'n v. Tashman,* 318 F.3d 1273, 1277 (11th Cir. 2003); *Fed. Trade Comm'n v. Freecom Commc'ns, Inc.,* 401 F.3d 1192, 1203 (10th Cir.

---

22. As to paragraph 102, it is admitted that HRC sustained quality-control issues in relation to the compounding pharmacies it utilized to supply pellets. This was true for Solutions Pharmacy and, initially, with MasterPharm. MasterPharm (which unlike Solutions Pharmacy is a PCAB accredited pharmacy) was able to correct the quality control issues in relation to compression in a timely manner to HRC's satisfaction. Upon information and belief, MasterPharm had its products subjected to a third party review to compare it to its peers, including Solutions Pharmacy and this review showed it was a superior product in terms of compression and formulation.

[27] 15 U.S.C. section 45(a)(1) states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

2005); Federal Trade Commission, *Policy Statement on Deception* (1983) ("*Cliffdale Statement*"), *appended to Matter of Cliffdale Assocs.,* 103 F.T.C. 110, 174 (1984), *availableat* https://www.ftc.gov/system/files/documents/public_statements/410531/83101 4deceptionstmt.pdf). Accordingly, in our resolution of this appeal, we are guided by the following jurisprudence.

### a. Element #1: Representation

As for the first element, the FTC distinguishes between express and implied advertising representations. Federal Trade Commission, *FTC Policy Statement Regarding Advertising Substantiation* (1984) ("*Thompson Statement*"), *appended to In the Matter of Thompson Med. Co., Inc.*, 104 F.T.C. 648 (1984), *available at* https://www.ftc.gov/public-statements/1983/03/ftc-policy-statement-regarding-advertisi ng-substantiation). The FTC has described the difference:

> Express claims are ones that directly state the representation at issue. Because the message is stated unequivocally, it is reasonable to interpret the ads as intending to make the claim. Implied claims are any claims that are not express. They range from claims that would be virtually synonymous with an express claim through language that literally says one thing but strongly suggests another to language which relatively few consumers would interpret as making a particular representation.

*In the Matter of Thompson Med. Co., Inc.*, 104 F.T.C. at 818-819.[28]

### b. Element #2: Likely to Mislead

There are two theories under which an advertisement may be held likely to mislead. The first is referred to as the falsity theory, under which the plaintiff has to prove that the express or implied message by the advertisement is false; the second is called the reasonable basis or adequate substantiation theory, under which the plaintiff must show "that the advertiser lacked a reasonable basis for asserting that the message

---

[28] In *Kraft, Inc. v. FTC*, 970 F.2d. 311 (7th Cir., 1992), the court further explained the distinction:

> [C]onsider the following. Suppose a certain automobile gets poor gas mileage, say, 10 miles per gallon. One advertisement boasts that it gets 30 miles per gallon while another identifies the car as the "Miser," depicts it rolling through the countryside past one gas station after another, and proclaims that the car is inexpensive to operate. Both ads make deceptive claims: the first does so expressly, the second does so impliedly.

970 F.2d at 318 n.4.

was true."[29] *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1096 (9th Cir. 1994) (citing *In the Matter of Thompson*, 104 F.T.C. at 818-819); *F.T.C. v. QT, Inc.*, 448 F. Supp. 2d 908, 959 (N.D. Ill. 2006), *amended on reconsideration in part*, 472 F. Supp. 2d 990 (N.D. Ill. 2007), *aff'd* 512 F.3d 858 (7th Cir. 2008); *F.T.C. v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1190 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009). It is important to note that "statements susceptible of both a misleading and a truthful interpretation will be construed against the advertiser." *Murray Space Shoe Corp. v. F. T. C.*, 304 F.2d 270, 272 (2d Cir. 1962) (citing *U.S. v. 95 Barrels of Vinegar*, 265 U.S. 438, 443 (1924)). But when an "advertisement contains an express claim, the representation itself establishes its meaning." *Matter of Cliffdale Assocs.*

Additionally, the FTC has made clear that "[a]dvertisers are subject to liability for false or unsubstantiated statements made through endorsements, or for failing to disclose material connections between themselves and their endorsers." 16 C.F.R. § 255.1(d). "When there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed." *Id.* at § 255.5.

### c.  Element #3: Materiality

"A claim is considered material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding a product.'" *Kraft*, 970 F.2d at 322 (quoting *Matter of Cliffdale Assocs.*, 103 F.T.C. at 165). A presumption of materiality is applied "with three types of claims: (1) express claims; (2) implied claims where there is evidence that the seller intended to make the claim; and (3) claims that significantly involve health, safety, or other areas with which reasonable consumers would be concerned." *Kraft*, 970 F.2d at 322–23 (citing *In the Matter of Thompson*, 104 F.T.C. at 816-17; *Cliffdale Statement* at 182-83); *see also Nat'l Urological Grp.*, 645 F. Supp. 2d at 1190 ("'Express claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumptively material.' In addition, other courts have also found claims that "significantly involve health, safety, or other issues that would concern reasonable customers" to be presumptively material." (citations omitted) (quoting *F.T.C. v. Windward Mktg., Inc.*, No. CIV. A. 1:96-CV-615F, 1997 WL 33642380, at *10 (N.D. Ga. Sept. 30, 1997))).

---

[29] The State argued that some of HRC's advertisements were likely to mislead under the falsity theory and some under the adequate substantiation theory; the trial court granted summary judgment on those advertisements that it held were deceptive under the falsity theory.

As noted earlier, the court held that HRC's advertisements violated the TCPA in five ways; we discuss each holding in light of the foregoing authority and the undisputed facts.[30] For the reasons set forth below, we conclude that the State was entitled to judgment as a matter of law.

### i. The Trial Court's Conclusion that HRC Violated the TCPA by Making Express Claims that HRC Medical's BHRT Is Completely or Absolutely Safe

First, the lack of dispute with respect to Paragraphs 19 and 21 of the State's Rule 56.03 statement establishes that HRC represented in its advertisements that BHRT was, respectively, "completely safe"[31] and had "no health risks,"[32] satisfying the first element of a deceptive advertisement claim, i.e. that "the advertisement conveyed a representation through either express or implied claims." *Cliffdale Statement*. Second, Paragraph 17 establishes that this BHRT is not completely safe, thereby satisfying the second element, that that the representation was "likely to mislead."[33] These express representations in HRC's advertising raised a presumption of materiality, *Kraft*, 970 F.2d at 322, which was not rebutted by HRC. The elements of a deceptive advertising claim were satisfied as to this representation.

### ii. The Trial Court's Conclusion that HRC Violated the TCPA by Making Express Claims that HRC had No or Minimal Side Effects

Paragraph 40 established that HRC represented in its advertisements that BHRT had "no side effects"[34] and paragraph 35 established that HRC omitted mentioning side

---

[30] HRC's Response to the Statement of Material Facts stated "Defendants are prepared to admit every fact listed in the 249 paragraphs which purports to support the State's entitlement to summary judgment, with the exception of [17 paragraphs, specifically numbers 27, 28, 31, 34, 38, 50, 52, 112-115, 152, 181, 182, 204, 211 and 219]."

[31] Paragraph 19. "In an advertisement for Defendant HRC's BHRT that was accessible to Tennessee consumers at least as of June 11, 2012, Defendant Dan Hale stated, 'Bioidentical hormones are completely safe.'"

[32] Paragraph 21. "In an advertisement for Defendant HRC's BHRT that was accessible to Tennessee consumers at least as of June 25, 2012, Defendant Dan Hale stated, 'So they-so there are actually no health risks that we've ever been able to determine with the bio-identical hormones.'"

[33] Paragraph 17. "Defendant HRC's BHRT is not absolutely or completely safe."

[34] Paragraph 40. "In an advertisement for its BHRT that was accessible at least as of June 11, 2012, Defendant HRC stated the following, in relevant part:

effects which the State had identified in paragraphs 28-33[35]; this satisfied the first element of a deceptive advertising claim under the TCPA. Paragraphs 27, 34, and 35 establish that the representations were likely to mislead because BHRT does have side effects,[36] many of which were not disclosed in the advertisements identified by the State.

---

Progesterone has proven bioavailability and no side effects making it the preferred hormone for menopause."

[35] Those paragraphs read:

Paragraph 28. "Possible side effects of Defendant HRC's BHRT in women include a deepening of the voice, dysfunctional uterine bleeding, hypertension, hair loss, clitoral hypertrophy, unwanted facial hair, acne, weight gain, and fluid retention."

Paragraph 29. "Endometrial hyperplasia, which may be a precursor to endometrial cancer, but may also be benign, is also a possible side effect of Defendant HRC's BHRT."

Paragraph 30. "Menstrual or menstrual-like bleeding is a possible side effect of Defendant HRC's BHRT in menopausal women."

Paragraph 31. "Possible side effects of Defendant HRC's BHRT in men, which consisted of testosterone, an anabolic steroid, include acne, hypertension, erythroeytosis, testicular atrophy, and azospermia."

Paragraph 32. "Gynecomastia (or the appearance of female-looking breasts) in men is also a possible side effect of Defendant HRC's BHRT."

Paragraph 33. "An increase in hemoglobin, hematocrit, or the 'thickening' of one's blood is a side effect associated with Defendant HRC's BHRT for men and women that may increase the risk of developing a blood clot, stroke, heart attack, or other cardiovascular problems."

***

Paragraph 35. "In other places, Defendant HRC disclosed a few possible side effects, but omitted reference to other side effects. For example, in a brochure for its BHRT distributed to prospective consumers in Tennessee, Defendant HRC only stated the following about side effects [excerpted below]:

What are the side effects?

A small number of women may have increased breast sensitivity and spotting. The spotting is managed with progesterone capsules each evening. Most of these side effects, if they occur, will resolve after your body adjusts to the hormones."

[36] In our discussion of Undisputed Facts, *supra*, we determined that Defendant's responses to Paragraphs 27, and 34 were undisputed for purposes of summary judgment. We include them here for contextual purposes:

27

As with HRC's safety claims, the express representations raised a presumption that they were material assertions within the meaning of *Kraft*, and the presumption was not rebutted; thus, the undisputed facts established that the advertising claim was deceptive.

### iii. The Trial Court's Conclusion that HRC Violated the TCPA by Making Express Claims about Restoring Hormones to the Level that They were at in a User's Twenties or Thirties or to their Prime

Paragraphs 90 and 91 established that HRC represented in its advertising that BHRT would restore hormone levels to the levels at which they were in the consumer's twenties and thirties.[37] In their response to the Rule 56.03 statement, Defendants admitted Paragraphs 88 and 89, which stated, respectively, that for women and men the BHRT levels took testosterone levels to "levels that do not naturally exist." These statements were derived from the allegations of, and defendants' answers to, paragraphs 495-498 of the complaint.[38]

---

Paragraph 27. "There were possible side effects for Defendant HRC's BHRT for both men and women."

Paragraph 34. "Defendant HRC, including through spokespeople like Defendants Don Hale, Dixie Hale, and Dan Hale, did not disclose warnings about possible side effects and potential dangers in television, radio, print, and other promotional advertisements for HRC's BHRT."

[37] Those paragraphs read as follows:

Paragraph 90. "Defendants Don Hale, Dan Hale, and HRC represented in advertisements that HRC's BHRT restored a consumer's hormones to the levels that the consumer had when she or he was in her or his twenties and thirties or to the levels she or he had in her or his prime."

Paragraph 91. "Defendant HRC stated the following in a brochure distributed in Tennessee to prospective consumers of its BHRT as excerpted below:

Renew! Naturally derived Amor VieTm will renew the hormone levels of your prime! Unlike many other hormone treatments, you Amor VieTM therapy is personally designed to restore the optimal hormone levels found in your early 20s, not just the levels for a mid-life or senior adult."

[38] Paragraph 497 of the Complaint alleged that "Similarly, for men in their twenties and thirties, testosterone is between 200 and 700 ng/dL in 95% of men." Defendants' answer to this paragraph stated "Denied. Most labs will give a normal as up to 1200 ng/dL in man." This denial does not establish an issue of material fact which would preclude summary judgment. Paragraphs 496 and 498 of the

28

In its analysis, the trial court held:

Defendant, Dan Hale, on behalf of HRC, explicitly stated that BHRT could make your hormones "exactly like"[39] and "biologically identical"[40] to the hormones of a younger individual, a statement that would tend to mislead a consumer into believing HRC could determine what a consumers hormone levels were when they were in their twenties or thirties and BHRT treatments could accurately match those hormone levels. . . . Defendant Dan Hale admits that BHRT was intended to take hormones to levels that did not exist naturally in even twenty or thirty year olds, but that the goal was symptom relief. Dan Hale seems to advance the argument that the actual hormone levels didn't matter because the goal was to make people *feel* like they were in their twenties and thirties again and this was conveyed in the advertisements. Defendants explicitly stated the hormones could be exactly matched [to] those of a twenty or thirty year old. (Emphasis in original).

We agree with the trial court's holding that the advertisement was misleading. The advertisement expressly represented that the BHRT would "restore the optimal hormone levels found in your early 20s." In his answer to the Complaint, however, Dan Hale admitted the allegations that, as to both women and men, HRC's BHRT was intended to take a . . . testosterone levels to levels that do not naturally exist." Moreover, in its response to the statement of facts, HRC did not cite to proof establishing how the hormone levels that patients had during their early years could be determined. On the record presented, Defendants lacked a reasonable basis for asserting that the message was true.

### iv. The Trial Court's Conclusion that HRC Violated the TCPA by Making Express Claims about FDA-Approval of Compounding Pharmacy

In Paragraphs 113 and 114, the State established that HRC made the express claim that its BHRT treatment was "bio-engineered" in an FDA pharmacy.[41] These statements

---

complaint were the bases of paragraphs 88 and 89 of the statement of material facts; Defendants' answers to those paragraphs was "Agreed, but the goal was symptom relief."

[39] This was taken from Paragraphs 93 and 99 of the State's Rule 56.03 statement.

[40] This was taken from Paragraphs 24, 101 and 105 of the State's Rule 56.03 statement.

[41] Paragraph 113 reads: "In spite of this, Defendant HRC told consumers that its compounding pharmacy

were false and likely to mislead because Paragraph 112 established that the pharmacies used by HRC to manufacture its BHRT were not FDA approved.[42] HRC did not dispute this fact and thus failed to rebut the presumption that the statements were material. By making these representations, HRC violated the TCPA.

### v. The Trial Court's Conclusion that HRC Violated the TCPA by Making Material Omissions about Connections of Endorsers to HRC

Paragraph 138, which was admitted by Defendants, established that HRC used endorsements and testimonials from "principals of the company, family members of the principals of the company, employees of the company, or others with connections to HRC." Regulations implementing the FTCA require that, "[w]hen there exists a connection between the endorser and the seller of the advertised product," the seller must disclose that connection, 16 C.F.R. section 255.5; it is undisputed that HRC did not do so. The absence of that disclosure is presumed material because the endorsements related to a product affecting a user's health. *Kraft*, 970 F.2d at 322-23.

From the foregoing analysis, we conclude that the specific advertisements at issue were "deceptive acts . . . affecting the conduct of any trade or commerce," as proscribed by the TCPA.

### 3. Other Arguments

HRC argues that, if a "medical practice, act or procedure has been found to be 'deceptive,'" the plaintiff must then show that the deceptive practice is "unfair" in order

---

was FDA-approved in advertisements—a claim for which Defendant Dan Hale admitted he was responsible."

Paragraph 114 reads: "Defendant HRC stated the following in promotional materials for its BHRT, which were handed out to consumers in Tennessee:

> Our pellets are bio-engineered using all natural ingredients by our FDA approved compounding pharmacy. Our pharmacy is one of only two FDA approved pharmacies of their kind in the United States."

In our discussion of Undisputed Facts, *supra*, we determined that Defendant's responses to Paragraphs 113 and 114 were undisputed for purposes of summary judgment.

[42] Paragraph 112 reads: "The compounding pharmacies that Defendant HRC used to supply the components of its hormone replacement therapy were never approved by the United States Food and Drug Administration."

to establish a violation of the TCPA; this argument is without merit. The statute is clear: "unfair *or* deceptive" acts or practices are unlawful. Tenn. Code Ann. § 47-18-104(a), (b) ("The following unfair *or* deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part . . .") (emphasis added). To establish a violation of the TCPA, the plaintiff must show that the challenged acts or practices are either deceptive or unfair; it is not necessary to show both.

HRC also argues that *Tucker* "makes it clear that a Consumer Protection Act claim of the type asserted by the State must be supported by some proof of '**substantial harm**' as opposed to 'trivial' or non-significant medical effects or other harm." HRC contends that, in the absence of any proof that a patient suffered "**any harm ('substantial' or 'trivial')** that was medically connected to any clinical practices, or advertisements, of the HRC Clinics," a violation of the TCPA cannot be found. (Emphasis in brief). This argument is based on a misreading of *Tucker* and the TCPA.

In *Tucker*, the plaintiff sought damages for the shoddy construction of a modular home, asserting claims for breach of contract and under section 47-18-104(b)(2),(3), and (12). In resolving the claims under the TCPA, in compliance with section 47-18-115, this court interpreted and construed the TCPA in accordance with 15 U.S.C.A. § 45(n))[43] and held that "an act or practice should not be deemed unfair 'unless the act or practice causes or is likely to cause substantial injury to consumers themselves and to outweighed by countervailing benefits to consumers or to competition.'" 180 S.W. 3d 116-117 (quoting 15 U.S.C.A. § 45(n)). The court made no declaration with respect to deceptive claims. There is no requirement in the TCPA that deceptive acts or practices cause substantial harm in order to be actionable.

The basis of HRC's motion was that the State could not establish a violation of the TCPA. We have concluded that undisputed facts establish that HRC violated the TCPA and that the State was thus entitled to summary judgment as a matter of law. Our affirmance of the grant of summary judgment to the State pretermits any further consideration of the denial of HRC's motion.

---

[43] 15 U.S.C.A. section 45(n) states:

> The Commission shall have no authority under this section or section 57a of this title to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, the Commission may consider established public policies as evidence to be considered with all other evidence. Such public policy considerations may not serve as a primary basis for such determination.

**B.** **The State's Motion for Summary Judgment on Damages and HRC's Second Motion for Summary Judgment**

In the State's second motion for summary judgment ("Damages Motion"), the State asserted the trial court should assess "a consumer redress award of $18,141,750 to be lodged jointly and severally against Defendants HRC Medical Centers, Inc., Don Hale, Dan Hale, and Dixie Hale," and enter a permanent injunction preventing them from engaging in the conduct which led to the liability determination. In its competing motion, among other things, HRC sought to reargue the court's earlier grant of summary judgment on the issue of liability, and asserted that the State was not entitled to summary judgment of the issue of damages because it had failed to mitigate damages.

The trial court held that there was not a genuine issue of material fact and granted the State's motion, assessing what it called a consumer redress award[44] of $18,141,750, jointly and severally against HRC, Don Hale, Dan Hale and Dixie Hale; the court also entered a permanent injunction pursuant to Tennessee Code Annotated section 47-18-108. The court denied HRC's motion.

In support of its motion, the State filed a Rule 56.03 Statement of Undisputed Material Facts consisting of 102 statements. HRC admitted 88 of the statements without qualification, admitted one (number 66) but asserted that it was immaterial, admitted another (number 19) to which it added a "material qualification," either partially or fully denied two paragraphs (numbers 28 and 88), and objected to another ten (numbers 92-102) on the basis that the paragraphs were "to an inadmissible and irrelevant factual opinion." Upon our review, we have determined that the statements which were not admitted or were admitted with qualification do not create a genuine issue of material fact as to the issue of damages, such as to preclude summary judgment.[45]

---

[44] "Consumer redress award" is a term used by the trial court and the parties to describe the award of damages; it is not a defined term in either the FTCA or the TCPA.

[45] Paragraphs 19, 28, and 66 addressed advertisements discussed in the liability section, *supra*. Paragraph 88 addressed the amount of BHRT consumers nationwide and nationwide revenue; the damage award was based on the number of and amounts paid by consumers in Tennessee. Paragraphs 92 through 102 of the Rule 56.03 statement were supported by affidavits of various HRC customers which had been attached to the State's first motion for a temporary restraining order; in the affidavits the customers state the amount paid for the treatment and whether or not the customer received a refund. HRC's objection to each statement was:

> Denied as an admissible fact, as 'containing a statement which cannot be supported by a layman's observation (i.e., side effects associated with HRC's BHRT) in a record in which not a single medical expert (even at this late date) has identified a causal relationship between any HRC patient and any harm (reference the Rule 26 disclosures of Plaintiffs experts. Drs. Liu and Finkelstein; the interrogatory responses

32

HRC also filed a Rule 56.03 statement in support of its motion, citing the Complaint, the affidavit of Dr. Ted Anderson, portions of the State's answers to interrogatories, the supplemental affidavit of Don Hale, the Rule 26 disclosure statements of Dr. James Liu and Dr. Joel Finkelstein. Upon our review, the materials relied upon by HRC relate to its defense to liability, and not to the calculation of damages or the formula used; thus, HRC's response does not create a genuine issue of material fact which would preclude summary judgment for the State or establish a factual basis for judgment on HRC's motion.[46]

---

(comprehensively) of Drs. Liu and Finkelstein; the sworn affidavits of Dr. Robert Neal Rouzier, Dr. Robert C. Grafton, Dr. John Farmer, Dr. Rhett Bergeron, and Dr. James Staheli. The foregoing objection to an inadmissible and irrelevant factual opinion applies to Items 92 through 102.

HRC's response does not raise a genuine issue of material fact as to the amounts paid by the customers and whether the customer received a refund. The other matters raised in the response relate to the grant of summary judgment on the issue of liability and are not pertinent to this issue.

[46] The only evidence cited in support of HRC's statements that were relevant to the issue of damages were several paragraphs from Don Hale's supplemental affidavit and the States' answer to interrogatory response seven. In the portion of Mr. Hale's supplemental affidavit, he explains that neither HRC nor any of the Hales received any warning letter before this action was filed and that HRC would have changed the advertising and not opposed "careful, ongoing monitoring" had it been contacted. In interrogatory seven, the State was asked to identify "how each consumer was financially or economically harmed by the Defendants' alleged deceptive or misleading statements . . . ." The State made several objections and answered:

The State asserts that for purposes of alleged violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* in the Second Amended Complaint, consumers incurred ascertainable losses in amounts equal to the total monies paid to HRC Medical Centers, Inc. for its bio-identical hormone replacement therapy, less any reimbursements actually received, plus statutory interest.

The State is not aware of a comprehensive list itemizing the total monies paid by consumers to HRC Medical Centers, Inc., but will supplement this answer in accordance with the Tennessee Rules of Civil Procedure if additional information becomes available.

As of October 5, 2010, a year's treatment of HRC Medical's BHRT for men was $3,450 per year. 1st TRO Mot. Ex. 2, Sworn Test. of Andrea Bernard, Ex. 18.

As of October 7, 2011, a year's treatment of HRC Medical's BHRT for women was $2,950 per year. 1st TRO Mot. Ex. 2, Sworn Test. of Andrea Bernard, Ex. 19. As of October 16, 2009, HRC Medical Centers, Inc. also offered $1,100 for initial blood work and the first implant with "a la carte" pricing after. 1st TRO Mot. Ex. 2, Sworn Test. of Andrea Bernard, Ex. 16.

In the order on the motions, the trial court listed 133 undisputed facts, and proceeded to discuss the elements of a TCPA claim, including deception, unfairness, reliance and causation; the court held that all necessary elements had been shown.[47] The factual findings and legal conclusions are not challenged on appeal. The court made the $18,141.750 award, calculating it according to the following formula: "$2,250 (figure below median price of BHRT) multiplied by 8,463 (lowest number of BHRT consumers asserted by HRC) less $900,000 in refunds."[48] HRC did not seek post-judgment relief from the trial court. In its brief on appeal, HRC states the issue relative to the damage award thusly:

> Does the record contain any admissible evidence of a mathematically precise computation of reasonably identifiable alleged direct losses incurred by consumers, which may be causally referable to the "misleading or deceptive" practices alleged by the State in its summary judgment motion, and accepted by the trial court?

HRC argues that the trial court "simply accepted the 'gross totals received' as the amount of restitution that needed to be returned to the State on behalf of the HRC patients" and that the trial court did not fulfill its responsibilities under Tennessee Rule of Civil Procedure 56.04. We have determined that, under the circumstances, the trial court fully complied with the requirement of Rule 56.04 that it "state the legal grounds upon which the court denie[d] . . . the motion."

The legal basis for the order was largely set forth in the determination of liability. Tennessee Code Annotated section 47-18-108(b)(1) grants a court the following authority:

> The court may make such orders or render such judgments as may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use or employment of such unlawful method, act, or practice, any money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, which may have been acquired by means of any act or practice declared to be unlawful by this part.

---

[47] The court discussed and made findings relative to deception and causation based upon numerous affidavits of BHRT consumers.

[48] The figures used by the court were derived from undisputed figures in the Rule 56.03 statement and are not disputed on appeal.

34

A monetary award is an appropriate remedy for a violation of the TCPA. *See FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1211-1212 (N.D. Ga. 2008) *aff'd* 356 Fed. Appx. 358 (11th Cir. 2009); *FTC v. Febre*, 128 F. 3d. 530, 535 (7th Cir. 1997). Within the confines of that authority, the trial court made the award and explained the calculation of the amount; this satisfies its duty to give the grounds of its ruling. HRC's articulation of the issue appears to be directed toward the administration of the award, a matter which was not decided by the trial court and is not before us.

HRC also contends that the State failed to mitigate damages by failing to give HRC notice of intent to pursue proceedings pursuant to section 47-18-108(a)(2). We have discussed the notice issue earlier in this opinion and, for the reasons stated earlier, conclude that the State did not have a duty to notify HRC prior to filing its requests for injunctive relief. Cases under the FTCA have held that "The FTC . . . has no established duty to mitigate damages by bringing suits earlier or entering into settlement agreements." *Fed. Trade Comm'n v. Stratford Career Inst.*, No. 16-CV-371, 2016 WL 3769187, at *4 (N.D. Ohio July 15, 2016); *see also F.T.C. v. Medicor LLC*, No. CV-011896-CBMEX, 2001 WL 765628, at *2 (C.D. Cal. June 26, 2001). Those courts have further held that "the refund of monies paid" constitutues an equitable remedy and "[m]itigation of damages is irrelevant where all relief sought is equitable and dependent upon the amount of gain received by the defendants, not the amount of loss suffered by the plaintiff. *Stratford Career Inst.*, 2016 WL 3769187, at *4 (citing *Medicor LLC*, 2001 WL 765628, at *2). Drawing on these authorities, as we are required to do,[49] we conclude that neither section 108(a)(2) or the TCPA generally require the State to mitigate damages by giving HRC prior notice of its investigation or its intent to file suit. Accordingly, we affirm the grant of summary judgment to the State on the issue of damages.

In its brief, HRC also argues that statements by Dr. Anderson in affidavits filed in support of injunctive relief contradict statements in his depositions and should have been excluded. HRC also contends that the States' Rule 26 disclosures for Drs. Liu and Finkelstein were "untimely and inadequate." Neither the Liability Motion nor the Damages Motion depended on or cited the testimony of Dr. Anderson, Dr. Liu, Dr. Finkelstein, or any other of the States' experts, rather, as explained above, the State's motions were supported by and dependent primarily upon HRC's advertisements and admissions. Because we have concluded that both of the State's motions for summary judgment were properly granted, this issue is pretermitted.

---

[49] *See* Tenn. Code Ann. § 47-18-115.

## CONCLUSION

Finding no error, we affirm the judgment of the trial court.

RICHARD H. DINKINS, JUDGE